Filed 2/4/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re the Marriage of ANNA ANKA and LOUIS YEAGER. | |
| ANNA ANKA,<br><br>   Appellant,<br><br>v.<br><br>LOUIS YEAGER et al.,<br><br>   Respondents;<br><br>LISA HELFEND MEYER,<br><br>   Objector and Appellant. | 2d Civil No. B281760<br>(Super. Ct. No. SD032322)<br>(Ventura County) |

It is axiomatic that an attorney must represent a client to the best of his or her ability. The attorney owes a duty to that client to present the case with vigor in a manner as favorable to the client as the rules of law and professional ethics permit. But besides being an advocate to advance the interest of the client, the attorney is also an officer of the court. (See Bus. & Prof. Code, § 6067; *Norton v. Hines* (1975) 49 Cal.App.3d 917, 922.)

California Rules of Court, rule 9.7, pertaining to the oath required when an attorney is admitted to practice law, concludes with, " 'As an officer of the court, I will strive to conduct myself at all times with dignity, courtesy, and integrity.' "[1]  These cautions are designed to remind counsel that when in the heat of a contentious trial, counsel's zeal to protect and advance the interest of the client must be tempered by the professional and ethical constraints the legal profession demands.  Unfortunately, that did not happen here.

In a child custody dispute, the trial court imposed $50,000 in sanctions jointly and severally against an attorney and her client for disclosing information contained in a confidential child custody evaluation report.  (Fam. Code, §§ 3025.5, 3111.)[2]

We affirm the order for sanctions against the attorney but reverse the order for sanctions against the client.

FACTS

Anna Anka (Anna) was married to Louis Yeager.[3]  A child was born of the marriage.  The parties dissolved their marriage, but child custody issues remained (Yeager action).  The trial court ordered that a child custody evaluation be performed by Dr. Ian Russ, and that the parties undergo a psychological evaluation if Russ recommended it.  Russ filed a custody evaluation report that included a psychological evaluation by Dr. Carl Hoppe.

After the Yeager marriage dissolved, Anna married Paul Anka (Paul).  A child was born of that marriage also.  The Ankas

---

[1] Deletion of the words "strive to" from the oath gives it the potency it deserves.  Attorneys are up to the task.

[2] All further statutory references are to the Family Code unless stated otherwise.

[3] No disrespect intended; we refer to some parties by their first names for clarity.

dissolved their marriage, but child custody issues remained (Anka action).  Thus, Anna was a party to custody disputes in both the Yeager and Anka actions.  Attorney Lisa Helfend Meyer represented Anna in both actions.

Yeager filed an affidavit in support of Paul in the Anka action.  The affidavit accused Anna of substantial misconduct involving the children from both marriages.

Meyer took Yeager's deposition in the Anka action.  She asked Yeager numerous questions without objection about what he told Dr. Russ during the custody evaluation; what his child told Russ during the custody evaluation; and what Russ found and concluded.[4]  Yeager answered that he did not remember to most of the questions.  After a lunch break, Yeager did not return to continue the deposition.

Yeager moved for sanctions in the Yeager action under sections 3025.5 and 3111, subdivision (d) for disclosing information contained in a confidential custody evaluation.  The trial court granted the motion.

The trial court found the disclosures were made maliciously, recklessly, without substantial justification, and were not in the best interest of the child.  The court ordered Anna and Meyer to pay jointly and severally a fine of $50,000.  The court found that the fine was large enough to deter repetition of the conduct; and that in absence of evidence to the contrary, the fine would not impose an unreasonable financial burden on the parties.

---

[4] We need not add to the invasion of privacy by repeating the questions verbatim.

DISCUSSION

I

Meyer contends the information she sought is not protected by section 3025.5.

Section 3025.5, subdivision (a) provides:

"In a proceeding involving child custody or visitation rights, if a report containing psychological evaluations of a child or recommendations regarding custody of, or visitation with, a child is submitted to the court, . . . *that information* shall be contained in a document that shall be placed in the confidential portion of the court file of the proceeding, and may not be disclosed, except to the following persons:

"(1) A party to the proceeding and his or her attorney.

"(2) A federal or state law enforcement officer, the licensing entity of a child custody evaluator, a judicial officer, court employee, or family court facilitator of the superior court of the county in which the action was filed, or an employee or agent of that facilitator, acting within the scope of his or her duties.

"(3) Counsel appointed for the child pursuant to  Section 3150.

"(4) Any other person upon order of the court for good cause."  (Italics added.)

Meyer argues the term "that information" as used in section 3025.5, subdivision (a) refers only to "psychological evaluations of a child or recommendations regarding custody of, or visitation with, a child."  She claims nothing else contained in the report is protected.

Meyer acknowledges that she asked about Yeager's statements to Dr. Russ.  She also acknowledges she asked about Russ's findings whether Anna abused her children and the

4

children's attachment to Anna. But Meyer asserts none of these areas are protected by the statute.

Meyer attempts to parse the statute into meaninglessness. The purpose of section 3025.5, subdivision (a) is to protect the privacy of the child and to encourage candor on the part of those participating in the evaluation. Statements made to the evaluator and the evaluator's conclusions about parental abuse and the nature of the relationship between parent and child are well within the protection of the statute. The evaluator's conclusions about parental abuse and the relationship between parent and child are at the very heart of every child custody evaluation.

Meyer argues section 3025.5 carries no penalty for its violation. But section 3111, subdivision (d) provides:

"If the court determines that an unwarranted disclosure of a written [child custody evaluation] confidential report has been made, the court may impose a monetary sanction against the disclosing party. The sanction shall be in an amount sufficient to deter repetition of the conduct, and may include reasonable attorney's fees, costs incurred, or both, unless the court finds that the disclosing party acted with substantial justification or that other circumstances make the imposition of the sanction unjust. The court shall not impose a sanction pursuant to this subdivision that imposes an unreasonable financial burden on the party against whom the sanction is imposed."

Meyer claims section 3111 protects only the written report itself, not the confidential information contained in the report. Suffice it to say, the argument is absurd.

Meyer argues that her questions disclosed no confidential information. It is true that Yeager evaded answering the

5

questions by stating he did not remember. But the nature of Meyer's questions implicitly disclosed confidential information. One would have to be unduly naïve not to know the information contained in the report.

Meyer argues there were no disclosures to unauthorized persons. She points out the only persons present at Yeager's deposition were the parties, their attorneys, a court reporter, a videographer, and Paul's attorney.

Meyer claims the court reporter and videographer are exempt under section 3035.5, subdivision (a)(2) as officers of the court. But the subdivision does not exempt officers of the court; it exempts a "court employee." (*Ibid.*) Meyer points to no evidence that the court reporter and videographer are court employees. Nor is Paul's attorney exempt under section 3035.5, subdivision (a)(1) as an attorney for a party to the proceeding. The confidential custody report was prepared for the Yeager action. Paul is not a party to that action. Finally, Meyer points to no evidence that the deposition itself was taken under seal.

Section 3111, subdivision (f) defines an "unwarranted" disclosure as one that is "done either recklessly or maliciously, and is not in the best interests of the child."

Meyer argues the evidence does not support a finding of malice or recklessness. But Meyer did not inadvertently disclose information in the report. She intentionally asked numerous questions that disclosed the information. Her actions went beyond reckless; they were intentional.

Meyer argues her conduct did not negatively impact the child's best interest. But Meyer's questions disclosed highly personal information about the child and her family. That supports the trial court's finding that the disclosure was not in

the best interest of the child. Moreover, Meyer fails to explain how disclosing the information in the Anka action is in the best interest of Yeager's child.

Meyer argues she is protected by the litigation privilege. (Civ. Code, § 47, subd. (b).) But the litigation privilege does not apply to sanctions imposed by the trial court. (See *In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1527.)

Meyer's reliance on *Bernstein v. Alameda-Contra Costa Medical Assn.* (1956) 139 Cal.App.2d 241 and *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232 is misplaced.

In *Bernstein*, a physician prepared a report that criticized another physician. The report was prepared for use in litigation. The physician who prepared the report was disciplined by a local medical association under a bylaw prohibiting the criticism of another physician. The court held that the litigation privilege bars the enforcement of such a bylaw. (*Bernstein v. Alameda-Contra Costa Medical Assn.*, *supra*, 139 Cal.App.2d at p. 246.)

In *Action Apartment Assn.*, the court held that the litigation privilege preempts a local ordinance imposing civil and criminal penalties on any landlord who maliciously takes action to terminate a tenancy. (*Action Apartment Assn., Inc. v. City of Santa Monica*, *supra*, 41 Cal.4th at p. 1252.)

*Bernstein* and *Action Apartment Assn.* concern the preemption of an association bylaw and a local ordinance by Civil Code section 47, subdivision (b). They do not concern the imposition of sanctions by the trial court, an act expressly authorized by section 3111, subdivision (d). If the imposition of sanctions by the trial court were covered by the litigation privilege, the trial courts would have no control over litigation.

7

## II

Meyer contends the sanction order without findings supporting the imposition of sanctions violates due process.

Here the trial court expressly made all the necessary findings for the imposition of sanctions pursuant to sections 3025.5 and 3111. Meyer's actual complaint is that the trial court did not identify the factual basis for those findings. She relies on *Caldwell v. Samuels Jewelers* (1990) 222 Cal.App.3d 970.

In *Caldwell*, the trial court imposed sanctions pursuant to Code of Civil Procedure 177.5 for failure to comply with a court order. That section requires that the order imposing sanctions "recite in detail the conduct or circumstances justifying the order." The trial court's order simply stated there was "good cause appearing" to justify the sanctions. *Caldwell* held that the trial court stated an inadequate justification for the sanctions. (*Caldwell v. Samuels Jewelers*, *supra*, 222 Cal.App.3d at p. 977.) *Caldwell* also held "due process requires that any order giving rise to the imposition of sanctions state with particularity the basis for finding a violation of the rule." (*Id.* at p. 978.)

Here, unlike *Caldwell*, the trial court's order did not simply say "good cause appearing." Instead, the order made the factual basis for finding a violation abundantly clear. The order stated: "The court finds that portions of the Confidential Child Custody Evaluation of Dr. Russ and the Psychological Evaluation of Dr. Hoppe conducted in this case [Marriage of Yeager] were disclosed by the questions of Petitioner's counsel in a deposition in the [Marriage of Anka] case . . . . This constituted dissemination of information contained in a confidential custody evaluation in an unrelated case in violation of the prohibitions contained in Family Code sections 3025.5 and 3111(d) and Judicial Council

8

forms 328 and 329. The court finds that these disclosures were done maliciously, recklessly, and without substantial justification. The court further finds that these disclosures were not in [the child's] best interests. These acts are sanctionable by way of a fine."

That is sufficient to satisfy due process.

Meyer argues the fine violates the ban on excessive fines in the federal and California Constitutions. (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.)

Our Supreme Court in *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 729, articulated the test for determining whether a fine is unconstitutionally excessive. The court should consider: (1) the defendant's culpability, (2) the relationship between the harm and the penalty, (3) the penalties imposed in similar statutes, and (4) the defendant's ability to pay. (*Id.* at p. 728.)

As to culpability, Meyer willfully disclosed information that she knew was confidential and protected by statute. The harm is not only to Yeager and his child, it is also to the entire process of child custody evaluation. Meyer points to no similar statutes with which we can compare. Finally, Meyer had notice that Yeager was seeking $50,000 in sanctions. Evidence of her ability to pay is entirely within her control. But she made no effort to introduce such evidence.

The trial court did not abuse its discretion in imposing sanctions on Meyer.

### III

Although the trial court did not abuse its discretion in sanctioning Meyer, the sanctions against Meyer's client Anna are another matter.

9

There is nothing in the record to suggest Anna directed or even encouraged Meyer to disclose privileged information. Presumably Meyer, a seasoned trial attorney, was in charge of the proceedings. Most clients assume their attorney's questions are proper and will not expose them to sanctions. There is no suggestion that Anna thought otherwise.

The judgment (order for sanctions) against Meyer is affirmed. The judgment (order for sanctions) against Anna is reversed. Costs are awarded to respondents.

CERTIFIED FOR PUBLICATION.

GILBERT, P. J.

We concur:

PERREN, J.

TANGEMAN, J.

10

John R. Smiley, Judge

Superior Court County of Ventura

_____

Honey Kessler Amado, James A. Karagianides for Appellants.

Goldenring & Prosser, Peter A. Goldenring and Edwin S. Clark for Respondent Louis Yeager.

Degani Law Offices, Orly Degani; Law Offices of Salley E. Dichter, Salley E. Dichter for Minor and Respondent E.Y.