Filed 2/25/22

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JENNIFER SHENEFIELD, | D078643 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 18FL011393E) |
| MARK SHENEFIELD, | |
| Defendant; | |
| KAROLYN E. KOVTUN, | |
| Objector and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Tilisha Martin and Laura Miller, Judges.  Affirmed.

Karolyn E. Kovtun, in pro. per., for Objector and Appellant.

Higgs Fletcher & Mack, John Morris and Steven M. Brunolli, for Plaintiff and Respondent.

## INTRODUCTION

Mark Shenefield filed a request for order (RFO) with the court, seeking joint legal and physical custody of the child he shares with Jennifer

Shenefield.[1]  In his declaration, Mark quoted from and referenced the contents of a confidential, court-ordered psychological evaluation undertaken during Jennifer's previous marital dissolution.  Mark's attorney Karolyn Kovtun filed the paperwork.  Jennifer opposed Mark's request and sought sanctions for violations of Family Code[2] sections 3111, subdivision (d) and 3025.5, for unwarranted disclosure of the confidential custody evaluation.

The court ordered the issue of sanctions to be heard at trial.  Jennifer's trial brief detailed her arguments for why the court should impose sanctions on both Mark and Kovtun.  Mark did not file a trial brief.

Following trial, the court issued sanctions against Mark in the amount of $10,000 and Kovtun in the amount of $15,000.  Kovtun challenged the sanctions, filing a motion under Code of Civil Procedure section 473, subdivision (d).  A different court heard Kovtun's request to vacate the sanctions imposed against her and denied the request.

On appeal, Kovtun argues the court improperly sanctioned her because (1) attorneys cannot be sanctioned under section 3111; (2) the notice she received did not comply with due process standards; (3) the court lacked personal jurisdiction over her; (4) the court failed to enforce the safe harbor provision of Code of Civil Procedure section 128.7; and (5) the court improperly admitted and relied on a transcript of a meeting between Kovtun, Mark, and Jennifer.  We find Kovtun's arguments meritless, and we will affirm.

---

[1]     Because these parties share a surname, we refer to them by first name for clarity.

[2]     Statutory references are to the Family Code unless otherwise specified.

## I.

## BACKGROUND AND PROCEDURAL FACTS

Jennifer and Mark were married on August 22, 2014. They share one child, who was born in June 2016.

On May 25, 2017, Jennifer sought a temporary restraining order against Mark. On June 13, 2017, the court issued a domestic violence restraining order, which is set to expire June 12, 2022.

On September 13, 2017, Mark pled guilty to misdemeanor battery on a spouse. The court issued a criminal protective order against Mark. Jennifer was given sole physical custody of their child. Kovtun was Mark's attorney of record.

Jennifer filed for marital dissolution from Mark on September 26, 2018.

On August 21, 2018, Mark filed an RFO seeking joint legal and physical custody of the couple's child. In Mark's attached declaration, after detailing allegedly false allegations Jennifer made against her previous husband, Mark wrote: "Jennifer was ordered to undergo a E[vidence] C[ode] §730 evaluation by Dr. Stephen Sparta who suggested that she would do it again if she felt the ends justified the means." Then Mark explained the court presiding over Jennifer's previous marital dissolution matter ordered a psychological evaluation, which was performed by Dr. Steven Sparta[3] and published December 11, 2012. Mark quoted directly from that report for nearly a page of his declaration, single-spaced. Mark again discussed content from Dr. Sparta's evaluation in paragraph 10 of his declaration and referenced some of the details again in paragraph 15. Kovtun was his attorney of record.

---

[3] Mark's declaration spells Dr. Sparta's first name Steven and Stephen.

On February 20, 2019, Jennifer filed her responsive declaration to Mark's RFO. Jennifer wrote that Mark's RFO included "an illegal disclosure of a confidential medical evaluation under [E]vidence [C]ode 730, Family Code 3111 and Family Code 3025.5." Her response also noted that Mark had published the contents of the confidential evaluation on Facebook.

The parties appeared in court February 25, 2019. The court set the matter for a bifurcated trial, and the court told the parties it would determine custody, visitation, and sanctions at trial. The court set a trial readiness conference for May 30, 2019.

At the trial readiness conference, the court identified issues for trial: custody, visitation, child support, spousal support, and sanctions. No one objected to the litigation of sanctions. The court directed the parties to comply with the California Rules of Court and the local rules in filing trial briefs and exhibits.

Jennifer filed her trial brief August 7, 2019. Section B argued that sanctions were warranted against both Mark and Kovtun pursuant to section 3111, subdivision (d). She maintained that Kovtun disclosed the contents of the previous court-ordered custody evaluation maliciously, recklessly, and without substantial justification. Jennifer attached to her brief a transcript of a meeting that had occurred between her, Mark, and Kovtun on September 28, 2017.

Mark did not file a trial brief.

The bifurcated trial occurred over three half-days, on August 14, 2019, August 21, 2019, and January 15, 2020. Kovtun represented Mark.

The trial court rendered a final ruling February 28, 2020 and issued a final ruling on bifurcated trial on child custody, visitation and sanctions (Final Ruling).

4

In its Final Ruling, the court found that Mark provided excerpts of the child custody evaluation from a previous dissolution matter. It noted that Jennifer asked the court to impose sanctions in her February 20, 2019 response. It confirmed that at the May 30, 2019 trial readiness conference it had identified the request for sanctions as an issue for trial. The court stated that Kovtun was personally served Jennifer's trial brief, which identified the sanctions as an issue to litigate. The court wrote that "counsel was aware Petitioner would be requesting sanctions related to the unwarranted disclosure of the 730 Custody Evaluation in violation of Family Code §3111(d), and this request was reiterated in Petitioner's Trial Brief filed August 7, 2019." It found that Mark and Kovtun had actual notice of the request for sanctions, as well as an opportunity to respond to and oppose the request.

The court then found that Kovtun was a seasoned attorney, and as such, she should have been aware of sections 3025.5 and 3111, subdivision (d). It also found Kovtun was reckless in filing documentation that disclosed a confidential custody evaluation. It concluded Kovtun intended for the court to rely on the former custody evaluation from the unrelated case. It also found Kovtun was not a party to the unrelated case under section 3025.5, and thus sanctions were appropriate.

The court imposed $15,000 in sanctions against Kovtun, payable at $300 per month, starting April 1, 2020, with interest accruing at an annual rate of 10 percent.[4]

---

[4]    The court separately concluded Mark's disclosure of the content from the custody evaluation was unwarranted and without substantial justification, and it imposed monetary sanctions against Mark in the amount of $10,000.

5

On July 27, 2020, Kovtun filed a motion to vacate the portion of the judgment imposing sanctions against her.

Jennifer opposed the request, and Kovtun filed a reply.

A court different from the one that issued sanctions heard Kovtun's motion. Following a hearing, the reviewing court denied Kovtun's request and affirmed the sanctioning court's judgment, incorporating the sanctioning court's Final Ruling. The reviewing court concluded Kovtun was a party to the proceedings, as defined in California Rules of Court, rule 1.6(15), found Code of Civil Procedure section 128.7 inapplicable, concluded California Rules of Court, rule 5.14 did not apply, and found that Kovtun had received sufficient notice

Kovtun timely appealed.

## II.

## DISCUSSION

### A. Section 3111 Applies to Attorneys

#### 1. Section 3111

Section 3111, subdivision (a) allows a trial court to order a confidential custody evaluation when the court determines that doing so is in the best interest of the child. The corresponding report may not be disclosed to any person outside of the parties to the action, law enforcement, counsel for the child, or if a court orders the disclosure for good cause. (§§ 3111, subd. (b), 3025.5.) Section 3111, subdivision (d) states, "If the court determines that an unwarranted disclosure of a written confidential report has been made, the court may impose a monetary sanction against the disclosing party." The monetary sanction should be an amount that deters repetition of the conduct; it may include reasonable attorney's fees, costs incurred, or both, but the

6

sanction shall not impose "an unreasonable financial burden on the party against whom the sanction is imposed."  (*Ibid*.)

This authority to impose sanctions was added to section 3111 as part of Assembly Bill No. 1877, effective beginning January 1, 2009.  (Leg. Counsel's Digest, on Assembly Bill No. 1877 (2007-2008 Reg. Sess.) Feb. 4, 2008.)  Prior to that revision, the law limited the availability and disclosure of the confidential report, but it did not expressly provide for sanctions for unwarranted disclosures.  (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1877 (2007-2008 Reg. Sess.) as amended April 3, 2008, pp. 2-3.)  The sanctions were added "to deter repetition of the conduct."  (§ 3111, subd. (d).)

2.  Applicability of Section 3111 to Attorneys

Kovtun's main argument is that the statute does not apply to her because she is an attorney, not a party to the litigation, and the statute authorizes sanctions only for parties.  She argues the plain language excludes attorneys, and the inclusion of attorneys in the statute is not supported by the definitions applicable in family court, which she contends define "party" to exclude an attorney of record.

The interpretation of a statute is a question of law, subject to de novo review.  (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.)  Our primary task is to "determine and effectuate legislative intent" by looking to the statute's language.  (*Woods v. Young* (1991) 53 Cal.3d 315, 323.)  We give words their plain and commonsense meaning.  (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103.)  "[W]hen the statute's language is ambiguous or susceptible of more than one reasonable interpretation, [the court may] turn to extrinsic aids to assist in interpretation."  (*Ibid*.)  Moreover, "[w]here a statute is theoretically capable

7

of more than one construction we choose that which comports with the intent of the Legislature." (*California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844.)

### a. Statutory Language and Legislative Intent

The statute states the party against whom the court may appropriately impose sanction is the "disclosing party." (§ 3111, subd. (d).) The modifying word "disclosing" describes which parties are included in the statute: any person who discloses the confidential information when doing so is unwarranted.[5] The plain language of the statute does not limit its application to named litigants; attorneys can make unwarranted disclosures of the confidential information.

The legislative history of section 3111 supports the conclusion that the sanctions apply to attorneys of record. Before subdivision (d) was added, courts could issue sanctions using section 271. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1877 (2007-1008 Reg. Sess.) as amended Mar. 13, 2008, p. 2). Under section 271, courts could "base an award of attorney's fees and costs on the extent to which the conduct of each party or their attorneys further[ed] or frustrate[d] the promotion of settlement and reduce[d] litigation costs." (Concurrence in Sen. Amendments, Sen. Com. on Judiciary, Bill Analysis of Assem. Bill No. 1877 (2007-2008 Reg. Sess.) as amended June 17, 2008, p. 2.)

The conduct described in section 271 is different from that prohibited by section 3111, subdivision (d): Section 3111, subdivision (d) seeks to deter the disclosure of confidential information, while section 271 seeks to encourage cooperation toward settlement. (See *Boblitt v. Boblitt* (2010) 190

---

5    Later statutory language further explains the disclosure is unwarranted if the disclosure is malicious or reckless. (§ 3111, subd. (f).)

8

Cal.App.4th 603, 612 ["The duty imposed by Family Code section 271 requires a party to a dissolution action to be cooperative and work toward settlement of the litigation on pain of being required to share the party's adversary's litigation costs"].)  And the Legislature wanted to deter the disclosure of information contained in child custody evaluations:  "Because parties are ordered to undergo an evaluation, it is imperative that the confidential nature of a report be protected to [e]nsure [ ] the full cooperation of those involved and to encourage full disclosure to the professionals."  (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1877 (2007-2008 Reg. Sess.) as amended April 3, 2008, p. 3.)  The Legislature was concerned that it was not clear how section 271 would benefit unrepresented parties, and that the limitations to attorney fees and costs provided for in section 271 would not be sufficient to deter repetition of the conduct prohibited by section 3111.  (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1877 (2007-2008 Reg. Sess.) as amended April 3, 2008, pp. 3-4.)  Thus, the intent of section 3111, subdivision (d) was to "establish[ ] clear penalties for distributing the information and ensuring that all interested parties are aware of the penalties."  (Assem. Com. on Appropriations, Analysis of Assem. Bill No. 1877 (2007-2008 Reg. Sess.) as amended April 3, 2008, pp. 1-2.)  The bill sought to "ensure that sensitive information obtained for the court remains confidential."  (*Ibid.*)

The legislative purpose of section 3111, subdivision (d) was discussed in *In re Marriage of Anka & Yeager* (2019) 31 Cal.App.5th 1115 (*Anka*).  There, the appellate court affirmed the imposition of sanctions against an attorney who violated section 3111 for asking questions in a deposition that elicited information from a child custody evaluation report ordered during a previous marriage dissolution.  (*Anka*, at pp. 1118, 1123.)  The attorney did not

9

challenge the court's authority to impose sanctions for violating section 3111, but the *dicta* is persuasive. The court explained that the attorney's willful disclosure of confidential information protected by statute harmed the opposing litigant and also harmed "the entire process of child custody evaluation," implicitly recognizing the need for truthful communications in evaluating a child's best interests. (*Anka*, at p. 1122.)

If section 3111, like section 271, applied only to the parties to litigation, a party to the dispute could simply share the information with counsel for the purpose of disclosing it, and the attorney could then properly release confidential information from the previous dissolution matter without consequence. This outcome is inconsistent with the intended purpose of the sanctions because it would discourage honesty during the custody evaluation, making it more difficult for the court to determine the best interests of the child. (See § 3111, subd. (a); Cal. Rules of Court, rule 5.220; *Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 583 [courts consider consequences that flow from a particular statutory interpretation].)

Finally, Kovtun argues that if section 271 does not authorize sanctions to be paid by attorneys, neither does section 3111. Attorneys *are* subject to sanctions for engaging in the behavior prohibited by Family Code section 271, like failing to work toward settlement, via Code of Civil Procedure section

10

128.5.[6]  (See *In re Marriage of Quinlan* (1989) 209 Cal.App.3d 1417, 1422.)

Including attorneys again within Family Code section 271 would be

redundant because the conduct detailed in Code of Civil Procedure

section 128.5 and Family Code section 271 overlaps.  The same is not true for

including attorneys in Family Code section 3111 because the conduct detailed

in section 3111 differs from what is detailed in other statutes.

> b.  California Rules of Court

Kovtun also argues the definitions applicable in family court preclude

attorneys from sanctions under section 3111 because, she contends, Rules of

Court, Title Five, the Family and Juvenile rules, define "party" to exclude

attorneys of record.  (See Cal. Rules of Court, rule 5.1.)

California Rules of Court, rule 5.2(b)(6) defines "party" to include "a

person appearing in an action," and it explains that "[a]ny designation of a

party encompasses the party's attorney of record, including 'party.' "  Indeed,

the definition of "party" in Title Five is consistent with the definition

provided in Title One, which contains the rules applicable to all courts.

California Rules of Court, rule 1.6(15), defines a "[p]arty" as "a person

appearing in an action," and it also notes that "party" "includes the party's

---

[6]  Code of Civil Procedure section 128.5 authorizes courts to impose sanctions against a party, the party's attorney, or both for the use of bad faith actions or tactics that are frivolous or intended to cause delay.  (Code of Civ. Proc., § 128.5, subd. (a).)  The section applies to actions or tactics in civil cases filed on or after January 1, 2015.  (*Id*., subd. (i).)  Code of Civil Procedure section 128.7, which prohibits filings that are presented for an improper purpose, requires a moving party to give the opposing party 21 days' notice and an opportunity to correct any pleading errors.  (*Id*., subds. (a), (b), (c)(1).)  It applies to matters in which complaints or petitions have been filed on or after January 1, 1995.  (*Id*., subd. (i).)

attorney of record." Thus, Kovtun's position on this point is incorrect; the Rules of Court define "party" to encompass a party's attorney of record.[7]

### B. Notice Complied with Due Process Standards

Kovtun contends she did not receive proper notice and therefore cannot be subject to sanctions in this matter. She maintains that the only way for Jennifer to meet the constitutional due process requirement was to file and personally serve a form FL-300, an RFO, naming Kovtun as the person against whom sanctions were sought, as required by California Rules of Court, rule 5.14.

What constitutes proper notice under section 3111, subdivision (d) is a question of law, which we review de novo. (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1479 (*Feldman*) [interpretation of statutes relied on to issue sanctions reviewed de novo].)

### 1. California Rules of Court, Rule 5.14 is Inapplicable

California Rules of Court, rule 5.14 is a sanction rule that applies to actions or proceedings brought under the Family Code for violating a rule of court and is "in addition to any other sanctions permitted by law." (Cal. Rules of Court, rule 5.14(a), (c), (d)(1)(A).) Sanctions raised under this rule must be based on the "failure without good cause to comply with the applicable rules," can be imposed only after the person seeking sanctions makes a request for order or the court issues an order to show cause (OSC), and must follow notice and an opportunity to be heard. (*Id.*, rule 5.14(c), (d).) "Sanctions awardable under this rule" are in addition to reasonable expenses, including attorney fees and costs associated with the motion for sanctions. (*Id.*, rule 5.14(e).) In other words, rule 5.14 applies to violations of the

---

[7] As we explain *post,* the authority to sanction an attorney in this situation is statutory.

12

California Rules of Court, not statutes. (See, e.g., *In re Marriage of Perow &*
*Uzelac* (2019) 31 Cal.App.5th 984, 991 (*Perow*) [discussing why section 271
sanctions do not follow procedural requirements detailed in California Rules
of Court, rule 5.14].) Here, the court awarded statutorily-authorized
sanctions provided for in section 3111, which is one of the "other sanctions
permitted by law" referenced in California Rules of Court, rule 5.14(c). Thus,
the procedural requirements of rule 5.14, a rule which was not identified by
the trial court as a basis for sanctions "in addition to" the section 3111,
subdivision (d) sanctions, do not apply to this matter.

2. Procedural Requirements

Kovtun contends Jennifer was required to file an RFO because she
sought sanctions. However, when a party to a marital dissolution moves to
modify an existing court order, the responding party may file a responsive
declaration in which the party may request sanctions in addition to opposing
the requested order. (*Perow*, *supra*, 31 Cal.App.5th at pp. 989-991
[discussing procedural requirements for sanctions under section 271].)[8]
"[B]ecause [a] sanction is necessarily *responsive* to the moving party's conduct
in litigating [a] motion, allowing a court to consider the moving party's
conduct at the same time as his motion without the need for a separately
filed motion for fees also 'avoid[s] possible duplicative, repetitious pleadings'

---

[8] Although sections 271 and 3111 are distinguishable in scope and
purpose, the procedural requirements surrounding section 271 nonetheless
demonstrate that not all sanctions statutes provide mandatory procedural
prerequisites with which strict compliance is required. Neither section
requires use of a request for order or submission of the FL-300 to provide
notice to the persons against whom sanctions are sought. (§§ 3111, subd. (d);
271, subd. (b) [requiring notice and an opportunity to be heard without
reference to procedure].)

[Citation] . . . ." (*Perow*, at p. 991.) In other words, there is no requirement that a party seeking a sanction does so in a separate RFO when the issue can be efficiently and properly handled in conjunction with the original request for order.[9]

Mark's August 2018 RFO sought joint legal and physical custody of their child. Along with the RFO, Mark filed a declaration in which he quoted from a court-ordered psychological evaluation of Jennifer completed during a previous dissolution proceeding to which Mark was not a party. In direct response to this RFO, Jennifer sought sanctions against Mark and his attorney, Kovtun, because the declaration disclosed the contents of the earlier court-ordered custody evaluation. Thus, Jennifer's request was responsive to Mark's and Kovtun's conduct.

Kovtun focuses on notice requirements detailed in Code of Civil Procedure section 128.5 and the Rules of Court. However, unlike those provisions, the text of Family Code section 3111, subdivision (d) does not

---

[9] Kovtun's statement that sanctions imposed against a party in the absence of a motion are not authorized under (any section of the) Family Code is misleading. *Mooney v. Superior Court* (2016) 245 Cal.App.4th 523 does not hold that sanctions can only be imposed following a motion. Instead, the court had expressly disavowed any intent to impose sanctions and explained that an order awarding attorney's fees pursuant to section 2032 was not authorized because that section of the code requires a motion. (*Mooney*, at pp. 535-536.)

14

require a separate RFO or otherwise mandate a noticed motion.[10] Family Code section 3111 does not detail any specific procedural requirements. And Kovtun's argument that the notice here did not strictly comply with the notice requirements of the Rules of Court is not persuasive because, as we have explained, the Rules of Court are not the basis for the sanctions. Thus, we consider instead whether the notice Kovtun received complied with due process.

3. Due Process Requirements Were Met

Due process requires "notice, an opportunity to respond, and a hearing." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 654.) The purpose of due process is to provide affected persons with the right to be heard " 'at a meaningful time and in a meaningful manner.' " (*Rodriguez v. Department of Real Estate* (1996) 51 Cal.App.4th 1289, 1296.) When sanctions are at issue, due process can be satisfied if the court gives a clear warning identifying the anticipated grounds for the sanctions or if those grounds are identified by the opposing party, and the court provides counsel with an opportunity to respond at least orally. (*In re Marriage of Quinlan, supra*, 209 Cal.App.3d at p. 1423.)

Jennifer first requested sanctions February 20, 2019, in her response to Mark's request for joint legal and physical custody of their child. Five days later, the parties appeared in court to address Mark's RFO. At that hearing, the court set the matter for a bifurcated trial to address custody, visitation,

---

[10]    Kovtun argues that because the FL-300 directs parties to file information regarding their requests for sanctions against *each other*, and does not provide an option for requesting sanctions from an attorney, attorneys cannot be ordered to pay sanctions. However, section 3111 does not specify that parties must file a form FL-300 at all. Thus, the omission of attorneys from the form holds no significance.

15

and sanctions, thereby notifying Kovtun that sanctions were at issue. Then, on May 30, 2019, the parties appeared for a trial readiness conference at which the court confirmed the issues for the trial were custody, visitation, child support, spousal support, and sanctions, again informing Kovtun of the possibility of sanctions and identifying when she would have an opportunity to be heard.

Section B of Jennifer's trial brief sought sanctions for the improper disclosure of a confidential report and detailed why sanctions against Kovtun would be appropriate in the circumstances, again highlighting the grounds for sanctions and identifying the time when Kovtun could be heard. Kovtun did not file a trial brief on Mark's behalf, though that would have been one way for Kovtun to respond to the request for sanctions. Each of these instances—Jennifer's response to Mark's RFO, the court's statements about the scope of issues, information at the trial readiness conference, and Jennifer's trial brief—provided Kovtun actual notice that she could be subject to sanctions. Taken collectively, these events persuade us the notice requirements of due process were met.

Kovtun does not claim the documents seeking sanctions were not served on her.[11] Nor does she claim that the court did not address the issue of sanctions in the hearing or at the trial readiness conference. But she nonetheless claims in her declaration to her motion to set aside her sanctions that she "was not given notice." The procedural facts outlined in the court's order refute Kovtun's claim.

---

[11]    Kovtun's declaration in support of her motion to set aside the sanctions portion of the judgment states that she was not served personally with an RFO or noticed motion seeking monetary sanctions.

Further, although Kovtun stated in her declaration that the court did not provide her an opportunity to be heard on the issue of sanctions before it issued its ruling, she points to no evidence to support this allegation beyond the bald statement in her declaration.  Certainly, Kovtun could have been heard in the trial brief she failed to file.

Moreover, the information before us indicates the issue of sanctions was one to be addressed at trial.  Kovtun fails to respond to the reviewing court's comment that evidence was "entirely within [Kovtun's] control, but she made no effort to introduce such evidence [regarding sanctions]."  Kovtun does not direct us to evidence in the record which demonstrates the issue of sanctions was handled at trial in a way that precluded Kovtun from an opportunity to be heard.[12]  To the extent that Kovtun's argument rests on the events of trial, it is her burden to present a record from which we can evaluate whether there has been error.  (*Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1509.)  The "failure to do so results in affirmance."  (*Ibid.*)

---

[12]    In Kovtun's motion to vacate the sanctions portion of the judgment, she argues that she made objections "as to herself" to the admission of a transcript of a meeting that occurred on September 28, 2017, and states that the court overruled those objections.  This information suggests Kovtun had an opportunity to be heard regarding her own interests.  It also appears to contradict her statement in her related declaration that "the issue of . . . the alleged unauthorized disclosure was never raised in trial, nor was it ever discussed."  It is unclear if a Reporter's Transcript from the trial exists.  No such transcript was requested by Kovtun's designation of record on appeal.  Nor did Kovtun request the minutes from the trial, which may have shed light more specifically on what occurred.  When there is no reporter's transcript and no error is evident from the face of the appellate record, we presume that the unreported trial testimony would demonstrate absence of error.  (*In re Estate of Fain* (1999) 75 Cal.App.4th 973, 992.)

C.  The Court Exercised Proper Jurisdiction to Impose Sanctions

Next, Kovtun contends sanctions were improper because the court did not have personal jurisdiction over her.  She argues that personal jurisdiction only attaches when a person is personally served with notice of possible sanctions.  We review the denial of request to vacate a judgment for lack of jurisdiction de novo.  (*People v. North River Ins. Co.* (2020) 48 Cal.App.5th 226, 232 [voidness is a legal question reviewed de novo].)

Kovtun misunderstands the source of the court's authority here.  An attorney is an officer of the court, "generally subject to the court's control as a 'person . . . connected with a judicial proceeding before [the court].' " (*Durdines v. Superior Court* (1999) 76 Cal.App.4th 247, 256, citing Code of Civ. Proc., § 128, subd. (a)(5) [explaining court's power includes controlling conduct of ministerial officers in furtherance of justice].)  As the Supreme Court explained in *Bauguess v. Paine* (1978) 22 Cal.3d 626 (*Bauguess*), "under certain circumstances both trial and appellate courts are authorized to order *counsel* to pay the opposing party's attorney's fees as a sanction for counsel's improper conduct."  (*Id.* at p. 635, fn. omitted.)  In doing so, courts draw on "equitable power derived from the historic power of equity courts [citations], and supervisory or administrative powers which all courts possess to enable them to carry out their duties [citations]."  (*Ibid.*)

The controversy in *Bauguess* asked the Supreme Court to evaluate whether a court could award attorney fee sanctions under its supervisory power absent statutory authority, and it concluded courts could not. (*Bauguess, supra*, 22 Cal.3d at pp. 636-637.)  But clear from the court's discussion was that courts have inherent power to punish via the contempt process, which incorporates procedural safeguards, and that the Legislature

18

can provide by statute the authority to impose sanctions.[13] (*Id.* at pp. 638-639.) Such is the case here. Section 3111 grants the court the authority to impose sanctions on counsel.

Finally, despite arguing that the court lacked personal jurisdiction over her for lack of personal service, Kovtun does not direct us to information in the record that demonstrates she was not personally served with the notice of the sanctions via Jennifer's trial brief; nor does she otherwise explain why personal service of that document did not comply with her due process rights of notice and an opportunity to be heard.[14]

### D. Code of Civil Procedure Section 128.7 Does Not Apply

Kovtun contends the court and Jennifer were required to comply with Code of Civil Procedure section 128.7 and its safe harbor provisions before sanctions against her could issue. She further contends that substantial compliance with the notice requirements of Code of Civil Procedure section 128.7 is insufficient.

### 1. Code of Civil Procedure Section 128.7

Code of Civil Procedure section 128.7 requires attorneys to certify that a motion or similar document filed with the court is not being used for an

---

[13] The Legislature subsequently enacted Code of Civil Procedure section 128.5 in response to *Bauguess*, broadening the power of trial courts by authorizing additional monetary sanctions. (*Olmstead v. Arthur J. Gallagher & Co.* (2004) 32 Cal.4th 804, 809.)

[14] Kovtun seems to suggest the court should have applied Code of Civil Procedure section 128.7 instead of Family Code section 3111. However, it is unclear why the court's use of Code of Civil Procedure section 128.7 addresses her argument regarding personal jurisdiction. Although Code of Civil Procedure section 128.7 requires a noticed motion, it does not mandate personal service, which is what Kovtun contends must occur for personal jurisdiction to attach. (See *id.*, subd. (c)(1).)

19

improper purpose, is not frivolous, and includes evidentiary support or likely will upon further investigation or discovery.  (Code of Civ. Proc., § 128.7, subds. (a)-(b)(3).)  It also offers a safe harbor provision so that an attorney has an opportunity to "avoid sanctions by withdrawing or otherwise appropriately correcting the offending paper, claim, defense, contention, allegation, or denial." (*Barnes v. Department of Corrections* (1999) 74 Cal.App.4th 126, 132 (*Barnes*).)  The party seeking sanctions must serve a noticed motion on the offending attorney, or the court must enter an order describing the offending conduct and stating it will issue an OSC for why the challenged conduct has not violated the law.  (Code of Civ. Proc., § 128.7, subds. (c)(1)-(2).)  "By withdrawing specious or meritless legal contentions, pointless and time-consuming litigation is avoided.  Failing to comply with procedures designed to minimize or reduce meritless litigation, in effect promotes it." (*Barnes*, at p. 132.)

Additionally, " 'the "safe harbor" provision works in conjunction with the duty of candor, giving the proponent of a questionable claim an opportunity to assess the claim's validity without immediate repercussion." [Citation.]' " (*Cromwell v. Cummings* (1998) 65 Cal.App.4th Supp. 10, 14.)  The safe harbor provision helps prevent the identified harm of pursuing meritless legal contentions.  Accordingly, notice requirements are strictly construed.  (*Barnes*, *supra*, 74 Cal.App.4th at p. 136.)

2.  Inapplicability of Code of Civil Procedure Section 128.7

The premise of Kovtun's argument is that because section 3111, subdivision (d) does not apply to attorneys, the only way the court could properly sanction her would be via Code of Civil Procedure section 128.7, which applies to attorneys and unrepresented parties.

Kovtun cites no authority for this conclusion, and she offers no explanation for why a safe harbor would be appropriate in the present circumstances.[15] Further, as we previously concluded, Family Code section 3111, subdivision (d) applies to attorneys; thus, Code of Civil Procedure section 128.7 is not the only procedural mechanism available to courts to impose sanctions on attorneys, as Kovtun contends.

We note, too, that a safe harbor provision would not be appropriate here because the harm Family Code section 3111 seeks to prevent is not the reduction of meritless litigation, which Code of Civil Procedure section 128.7 seeks to avoid. (*Barnes*, *supra*, 74 Cal.App.4th at p. 132.) Instead it is the disclosure itself that negatively impacts the process of determining custody in the best interests of the child. (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1877 (2007-2008 Reg. Sess.) as amended April 3, 2008, p. 3; *Anka*, *supra*, 31 Cal.App.5th at p. 1122.) Providing an attorney with the opportunity to retract a statement within a predetermined time does not avoid the harm of disclosure identified by Family Code sections 3111 or 3025.5.

Here, the filing revealed confidential information contained in a court-ordered psychological evaluation to help it determine the custody

---

[15] Kovtun's reliance on *Burkle v. Burkle* (2006) 144 Cal.App.4th 387 (*Burkle*) is misplaced. There the court did not hold that "any sanctions sought against the attorney" must be pursued via Code of Civil Procedure section 128.7, as Kovtun alleges in her opening brief. In *Burkle*, the court considered whether the filing of a civil action could warrant sanctions in a dissolution proceeding under Code of Civil Procedure section 128.7 and concluded it could. (*Burkle*, at pp. 393, 399-401.) Although the court separately noted in a footnote that attorneys cannot be sanctioned under Family Code section 271, the court there did not draw any comparison between Family Code sections 271 and 3111. (*Burkle*, at p. 403, fn.7.)

arrangements that were in the best interest of children in a prior marriage and custody dispute. Once that material had been revealed, the information became public—the very result the Legislature was concerned about when it adopted section 3111, subdivision (d). (Assem. Com. on Appropriations, Analysis of Assem. Bill No. 1877 (2007-2008 Reg. Sess.) as amended April 3, 2008, p. 1 [commenting that "confidentiality laws surrounding court ordered child custody evaluations are not strong enough to stop parents from widely and inappropriately disseminating the information contained in the reports"].)

E. Admissibility of Recording

1. Additional Facts

Jennifer filed for a restraining order against Mark on May 25, 2017. Her request alleged she experienced "physical abuse with injuries from strangulation and hitting by [Mark]," and she provided photographs of her injuries. Mark did not respond to Jennifer's request for a temporary restraining order and instead requested to go forward with the hearing. On June 13, 2017, the court issued a five-year restraining order. It prohibited Mark from contacting Jennifer or their child other than for court-ordered visitation, and it authorized Jennifer to record any violations of the restraining order.

On September 13, 2017, Mark pled guilty to violating Penal Code section 243, subdivision (e)(1), misdemeanor battery on a spouse. The court issued a criminal protective order against Mark. The order contained the same terms as the restraining order, prohibiting Mark from contacting Jennifer or their child other than peacefully for visitation, and it authorized Jennifer to record any violations. Kovtun was Mark's attorney of record in the criminal case.

22

On September 28, 2017, Jennifer attended a meeting at Kovtun's office, with Mark and Kovtun. Jennifer recorded the meeting. During the course of the meeting, Kovtun told Jennifer she was a liar and a bad and unfit mother who was harmful to their child. When Jennifer said if Kovtun were not there, Mark would probably be beating her, Kovtun responded, "You know what? I would be." Kovtun called Jennifer "nuts," said Jennifer was "out of [her] mind," commented that living with Jennifer was like dealing with a lunatic, and called Jennifer crazy.

Mark berated Jennifer, telling her that he was going to take their child away and get full custody, directing Jennifer to stop crying, and admonishing her that if she loved him, Jennifer would sign a custody agreement that would give Mark 50 percent custody. Kovtun repeatedly supported Mark's statements, commenting, "Yeah."

As a consequence of the September 28, 2017 meeting, Mark pled guilty to violating a court order (Pen. Code, § 166, subd. (c)(1)) in October 2018.

Also in October 2018, Jennifer filed a lawsuit in civil court against Kovtun alleging causes of action arising out of the conduct that occurred at the September 28, 2017 meeting. In connection with that lawsuit, Kovtun filed an anti-SLAPP motion, which the trial court denied.[16] That trial court concluded the transcript and recording of the conversation were admissible under the facts of that case.

Separately, on August 21, 2018, Mark filed the RFO for joint legal and physical custody of their child. Jennifer opposed the request and sought sanctions for violations of sections 3111 and 3025.5 in the RFO filing.

---

[16] Kovtun appealed the court's denial of a second anti-SLAPP motion in that matter, *Shenefield v. Kovtun*, case No. D078616.

The court that imposed sanctions on Kovtun as part of the Final Ruling discussed the contents of the transcript of the September 28, 2017 conversation. The trial court found that Kovtun is a seasoned attorney. The court stated that Kovtun acknowledged that she is a seasoned attorney to Jennifer during the September 28, 2017 conversation. It concluded that as a seasoned attorney, Kovtun should have been aware of sections 3111, subdivision (d) and 3025.5, subdivision (a)(1). The trial court also found Kovtun was reckless in filing the documentation, then stated it was "hard pressed to find that such disclosure was not intentional based on the statements made by [Mark]'s counsel to [Jennifer] at the meeting in her office on September 28, 2017." The court noted that Kovtun's statements were made after a restraining order was issued against Mark.

The court found that Kovtun intended for the court to rely on the confidential Evidence Code section 730 custody evaluation from an unrelated case. It ultimately determined that "by disclosing in court pleadings portions of a confidential report with [Jennifer's] private information," Kovtun "cause[d] harm . . . not only to [Jennifer] and her children, including the child she shares with Respondent, and her former husband," "but also to the entire process of litigation . . . ."

In her motion to vacate the sanctions portion of the judgment against her, Kovtun argued the court improperly considered the contents of the September 28, 2017 meeting because the recording was inadmissible.

In her opposition, Jennifer requested judicial notice of the civil court's conclusion that the recording was admissible. The court that denied Kovtun's motion to vacate the sanctions portion of the judgment did not expressly rule on the request for judicial notice. Nor did it reference the transcript in its denial.

24

2.  Admissibility of the Transcript

Kovtun argues that the sanctioning court improperly admitted and considered the transcript of the recording of the September 28, 2017 meeting at Kovtun's office.  She maintains that Jennifer violated Penal Code section 632 by recording the conversation because the communication was confidential, and such a recording is not admissible in a judicial proceeding. She further contends that her statements during the meeting are protected by the litigation privilege.

We review the admissibility of evidence for an abuse of discretion (Evid. Code, § 310; *People v. Waidla* (2000) 22 Cal. 4th 690, 717 ["Broadly speaking, an appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence"]; *People v. Hall* (2010) 187 Cal.App.4th 282, 294.)  "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' "  (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 (*Sargon Enterprises*), quoting *People v. Carmony* (2004) 33 Cal.4th 367, 377.)  Additionally, an " '[a]ction that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' [Citation.]"  (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393 (*Horsford*).)

Penal Code section 632 establishes a cause of action for invasion of privacy when a person records a confidential communication without the consent of all parties.  (Pen. Code, § 632, subd. (a).)  It prohibits evidence obtained through the recording of a confidential communication in violation of Penal Code section 632 from use in any judicial proceeding, except as proof

for violating Penal Code section 632.[17] (*Id.*, subd. (d).) Its definition of "confidential communication" excludes "a communication made . . . in any . . . circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." (*Id.*, subd. (c).) The standard for confidentiality is whether there is "an objectively reasonable expectation that the conversation is not being overheard or recorded." (*Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 777 (*Flanagan*).)

Kovtun was Mark's criminal defense attorney and represented him when he pled guilty to misdemeanor battery on a spouse on September 13, 2017. And she was his attorney when the court issued the corresponding protective order. Thus, she was aware of the protective order when she participated in the September 28, 2017 meeting, and she was aware that Jennifer had the right to record communications with Mark under the terms

---

17    Other sections of the Penal Code specifically permit victims of domestic violence to record confidential communications, and they provide that evidence from the recordings are admissible in actions seeking restraining orders or prosecuting domestic violence. (Pen. Code, §§ 632.01, subd. (d)(1)(F), 633.5.) Penal Code section 632.01, subdivision (d)(1)(F) permits the disclosure or distribution of a confidential communication by "[a] victim of domestic violence recording a prohibited communication made . . . by the perpetrator pursuant to [Penal Code] Section 633.6," a section which separately allows a victim seeking a domestic violence restraining order who reasonably believes a confidential communication contains evidence germane to the restraining order to record the communication for the purpose of providing the evidence to the court. (Pen. Code, § 632.01, subds. (d)(1)(A), (F); 633.6.) And Penal Code section 633.5 separately permits a party to a confidential recording to record the communication for the purpose of obtaining evidence reasonably believed to relate to the commission of another party to the communication of the crime of domestic violence. It also permits the admission of evidence from the recording to be used in a prosecution of such a crime.

of the restraining and protective orders. The court's February 27, 2020 Final Ruling noted that the September 28, 2017 meeting occurred after the restraining and protective orders were issued against Mark, recognizing that Kovtun knew Jennifer was authorized to record communications with Mark when Kovtun hosted the meeting at her office.

Kovtun's knowledge about Jennifer's right to record communications with Mark casts doubt on her claim that the communication was confidential. Because Kovtun knew Jennifer had a right to record communications that could evidence Mark violating the protective orders, it was not objectively reasonable for Kovtun to believe the conversation she participated in could not be recorded.[18] Absent such an expectation, the communication could not be characterized as confidential, and it therefore does not fall within the restrictions detailed in Penal Code section 632.

Kovtun emphasizes the language in Penal Code section 632 that prohibits the use of evidence obtained through the recording of a confidential communication in violation of Penal Code section 632 in any judicial proceeding. However, Kovtun's emphasis is misplaced. The statute only prohibits the admission of *confidential* communications in judicial proceedings, and Kovtun fails to explain why the communication was confidential, i.e., why there was an objectively reasonable expectation that the conversation was not being recorded. (See *Flanagan*, *supra*, 27 Cal.4th at pp. 777.) Thus, the court's admission of the transcript did not abuse its discretion because it did not " 'transgress the confines of the applicable principles of law' " (*Horsford*, *supra*, 132 Cal.App.4th at p. 393) and was not

---

18    In Kovtun's declaration to support her motion to set aside the sanctions portion of the judgment, she states that she suspected Jennifer was "playing to a recording device" during the September 28, 2017 meeting.

27

otherwise irrational or arbitrary such that " 'no reasonable person could agree with it.' " (*Sargon Enterprises*, *supra*, 55 Cal.4th at p. 773.)

Even had the court abused its discretion by admitting the transcript of the meeting, Kovtun does not identify any resulting prejudice. From the transcript, the court confirmed that Kovtun is a seasoned family law attorney, a finding Kovtun does not dispute.[19] On that basis, the court concluded that Kovtun should have been aware of the Family Code prohibition on disclosing the confidential custody communication and determined that Kovtun acted at least recklessly. The sanctioning court next provided additional details from the transcript of the September 28, 2017 meeting to explain why it concluded Kovtun's actions were likely intentional. But those conclusions were not necessary to determine Kovtun violated section 3111. (See § 3111, subd. (f) [explaining a disclosure is unwarranted if either reckless or malicious and not in the best interests of the child].)

Further, the record supports the sanctioning court's conclusion that Kovtun acted at least recklessly. Mark's declaration states that it is quoting from a court-ordered evaluation from a prior marital dissolution, published December 11, 2012. And in her motion to vacate the sanctions, Kovtun as much as concedes she was aware that the filing included quotations taken from Jennifer's previous court-ordered evaluation when she offers

_____

[19] Kovtun's declaration in support of her motion to vacate the sanctions portion of the judgment indicates she has been practicing law since 1995.

justification for why doing so was appropriate (and presumably therefore warranted).[20]

Finally, although Kovtun claims the substance of the communication is inadmissible because it is protected by the litigation privilege detailed in Civil Code section 47, subdivision (b), the incomplete nature of this argument waives it. She does not explain in her opening brief why the contents of the communication in this context are privileged or how the privilege impacts the court's use of the information to help assess her potential motives in filing documents that expressly disclosed the contents of the court-ordered evaluation. "Appellate briefs must provide argument and legal authority for the positions taken. 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citations.]' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.) It is insufficient to simply state general legal principles or legal authority; rather, an appellant must offer argument as to how the court erred and apply the law to the circumstances before the court. (*Landry v. Berryessa Union School Dist.* (1995) 39

---

[20]    Kovtun argues the information contained in that report was exculpatory to the criminal charges against Mark and therefore she could have subpoenaed the court-appointed evaluator to testify in the criminal case. The implication is that the same information could be quoted in the custody action. However, this disregards the different contexts of a criminal case, where there would have been at least an opportunity for cross-examination, and a dissolution matter, in which the information was publicly revealed without warning or opportunity to question the evaluator and without placement in the confidential portion of the court file of the proceeding (see § 3025.5). Kovtun's argument also does nothing to disprove the court's conclusion here that she knew the information was confidential when she filed the declaration disclosing its contents and serves to support the sanctioning court's conclusion that she intended for the court to rely on that information in reaching its decision.

Cal.App.4th 691, 699.) Moreover, although she develops her position in her reply brief, when she argues the litigation privilege is absolute and protects her from sanctions in connection with that communication,[21] we deem the argument forfeited for failure to raise it in the opening brief. (*Newton,* at p. 1005.)

Even were we to conclude the litigation privilege made the court's use of the transcript improper, it would not persuade us that the order denying the motion to vacate the sanctions portion of the judgment was erroneous. The sanctions did not arise out of Kovtun's conduct during the recorded meeting. The court sanctioned Kovtun because of her participation in the disclosure of confidential information in violation of sections 3111, subdivision (d) and 3025.5. The court considered the contents of the communication to support its conclusion that Kovtun acted intentionally and recklessly, but the court primarily based its conclusion that Kovtun acted recklessly on its evaluation that Kovtun is an experienced family law attorney. As we explained *ante*, even without that transcript, the court's conclusion is supported by substantial evidence. (See *Feldman*, *supra*, 153 Cal.App.4th at p. 1479 [findings of fact forming basis for sanctions award reviewed for substantial evidence].)

---

[21] Kovtun raises the litigation privilege as a defense to sanctions for disclosing the confidential contents of the Evidence Code section 730 custody evaluation for the first time on appeal in her reply brief. Accordingly, we deem the argument forfeited. (*People v. Newton* (2007) 155 Cal.App.4th 1000, 1005 (*Newton*).)

DISPOSITION

The order is affirmed.  Parties to bear their own costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


O'ROURKE, J.


GUERRERO, J.

31