Filed 9/16/24  Malinowski v. Martin CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| KAMILA MALINOWSKI,<br><br>       Plaintiff and Appellant,<br><br>v.<br><br>JUSTIN STEVEN MARTIN,<br><br>       Defendant,<br><br><br>ROBIN PRESS, PH.D.<br><br>       Real Party in Interest and<br>       Respondent. | A167482<br><br>(San Mateo County<br>Super. Ct. No. 18-FAM-02115-A) |

Kamila Malinowski appeals from an interlocutory order of the trial court that: (1) denied her motion to compel the compliance of real party in interest and respondent, Robin Press, Ph.D., with a deposition subpoena for business records; (2) imposed $1,345.50 in monetary sanctions on Malinowski for failure to meet and confer prior to bringing the motion; and (3) granted, in part, Malinowski's petition under Evidence Code section 1563, subdivision (b)(4), to reduce Dr. Press's witness costs.

We do not reach Malinowski's challenge to the denial of her motion to compel compliance with the deposition subpoena, as that ruling does not qualify as an appealable order.  As for the sanctions and costs orders, which

1

are appealable, we reject Malinowski's contentions that the court's orders were erroneous and contradictory. We therefore dismiss the portion of the appeal related to the order denying Malinowski's motion to compel compliance, and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2018, Malinowski filed for dissolution of her marriage to Justin Martin and sought a domestic violence restraining order against him. In 2020, the trial court ordered that a child custody evaluation be performed by Dr. Press with regard to the parties' two children.

The following events all occurred in 2022, unless otherwise specified. In February, Dr. Press served her child custody evaluation report on the parties.

On July 11, Malinowski's then counsel, Gary Dubcoff, served Dr. Press with a deposition subpoena for production of business records. The subpoena sought records relating to Dr. Press's education and qualifications and her work on the child custody evaluation report, with a production date of August 8, 2022.

After Dubcoff and Dr. Press exchanged initial email correspondence regarding electronic service of the deposition subpoena, Martin's counsel, Yvonne Seeley (who was copied on these emails) wrote to Dr. Press stating that an "*Anka* order"[1] was not yet in place and suggesting that one be obtained before Dr. Press released her file.

---

[1] Seeley's mention of an "*Anka* order" was an apparent reference to the need for a court order maintaining the confidentiality of the child custody evaluation report. (See *In re Marriage of Anka v. Yeager* (2019) 31 Cal.App.5th 1115 [affirming award of sanctions against attorney for disclosing information from confidential child custody evaluation report during deposition in different martial dissolution case].)

2

On August 3, attorney Dayna Olson wrote to Dubcoff and Seeley notifying them of her recent retention by Dr. Press. Olson stated "our understanding that Mr. Martin's attorney, Ms. Seeley, has objected to the production of these records absent an *Anka* order from the San Mateo Family Court. Therefore, at this time Dr. Press will refrain from producing any records in response to the subpoena until the *Anka* order is obtained."

On August 19, Dubcoff emailed Olson accusing Dr. Press of "purposefully disobeying the subpoena" and arguing he was entitled to the subpoenaed records as the attorney of a party to the proceedings. In response, Olson explained it was previously unclear whether Martin's counsel intended to file (or had already filed) a motion challenging the deposition subpoena due to the absence of an *Anka* order. After noting that no *Anka* order appeared to have been filed and that no motion to quash had been served, Olson stated "Dr. Press will produce the custody evaluation . . . upon receipt of her reasonable fees and costs under [Health and Safety] Code section 123110(j) and Evidence Code section 1563(b)." Olson further stated that Dr. Press was making a good faith inquiry into locating and producing the additional documents demanded in the deposition subpoena, including her curriculum vitae and various emails and correspondence.

On September 6, Olson forwarded an invoice in the amount of $1,200.00 to Dubcoff and Seeley for Dr. Press's fees and costs related to the deposition subpoena.[2] Olson explained that "[i]n accordance with Health and Safety Code section 123110, Dr. Press charges her reasonable hourly fee in order to compile and [*sic*] the medical records." Olson asked each side to

---

[2] According to the invoice, Dr. Press expended two hours in record preparation and one hour supervising the copied records, at an hourly rate of $400.

3

remit payment of $600.00 "so that we may submit the records to you in response to the subpoena." Olson further informed the parties' counsel that a third-party service was retained to assist Dr. Press, and that a separate invoice for its fees would follow.

Without responding to Dr. Press's invoice or otherwise communicating with Olson, Malinowski filed two motions in the trial court. First, on September 12, Malinowski filed a request for an order to show cause regarding "bad-faith excessive costs" charged by Dr. Press in violation of Evidence Code section 1563, subdivision (b)(1) and (4). In her supporting brief, Malinowski argued that Dr. Press's "extortionate demand" for $1,200.00 in fees was not authorized under Evidence Code section 1563 and was demanded in bad faith. Malinowski sought an order excusing her from paying Dr. Press any costs in excess of those mandated by statute, and an order requiring Dr. Press to pay Malinowski $2,500.00 for her expenses in obtaining the order.

Subsequently, on September 14, Malinowski filed a motion to compel Dr. Press's compliance with the deposition subpoena and for an award of monetary sanctions against Dr. Press. Malinowski's supporting brief accused Dr. Press of objecting to the deposition subpoena on the "utterly frivolous" ground that Martin had objected to the absence of an *Anka* order. Malinowski further argued that Dr. Press improperly conditioned her compliance on the payment of fees under Health and Safety Code section 123110, a statute that "has nothing *whatsoever* to do with" the deposition subpoena because neither Malinowski nor the children were "patients" of Dr. Press within the meaning of Health and Safety Code section 123105, subdivision (c).

4

Olson wrote to Dubcoff asserting he had failed to meet and confer in good faith prior to filing Malinowski's two motions.  However, in an effort to avoid unnecessary law and motion practice, Olson stated that "Dr. Press is willing to compromise on this issue and requests only that you reimburse her for the copy-service fee of $367.75 (or $183.88 per party) in exchange for the immediate withdrawal of the Motion to Compel, the Order to Show Cause, and the associated requests for sanctions."  Attached to Olson's letter was an invoice from Trinity eDiscovery (Trinity) for $367.75, itemized as follows:  an "Onsite set-up Fee" of $75.00; "Onsite scanning BW" at a rate of $0.25 per page for 871 pages, for a total of $217.75; and a labor charge of $75, based on an hourly rate of $25 for 3 hours.

Olson made several attempts to follow up on her compromise offer, but Dubcoff made no attempt to negotiate and simply informed Olson of his refusal to accept the offer.  Thereafter Dr. Press filed a consolidated opposition to the two motions and sought sanctions against Malinowski for her failure to meet and confer prior to filing her motion to compel.  (See Code of Civ. Proc., § 2025.480, subds. (b), (j).)

The trial court heard argument on the matter in December and announced its decision from the bench as follows:  "In regards to the motion to compel, that was filed on September 14, 2022, [t]he Court at this time denies [Malinowski's] motion to compel business records.  [¶] The Court finds that [Malinowski] did fail to meet and confer in good faith regarding the excessive fee issue.  [¶] [Malinowski] is ordered to pay Dr. Press $1,345.50 in sanctions for the failure to meet and confer.  [¶] In regards to the [order to show cause] that was filed September 12, 2022, at this time the motion is granted in part.  [Malinowski] is ordered to pay the copy service fee in the amount of $234.10 pursuant to Evidence Code section 1563, Subsection B1

5

within 10 days of this order so that Dr. Press may then release the records." In January 2023, the trial court issued a written order reflecting these rulings.

This appeal followed.

**DISCUSSION**

**A. Appealability**

We first address Dr. Press's argument that the appeal should be dismissed because the trial court's discovery and sanctions order is not appealable.

"Unless an order is expressly made appealable by a statute, this court has no jurisdiction to consider it." (*Levinson Arshonsky & Kurtz LLP v. Kim* (2019) 35 Cal.App.5th 896, 903.) "Consequently, it is the duty of the court to dismiss an appeal from an order that is not appealable." (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1432–1433 (*Doe*).)

Here, Malinowski's appeal from interlocutory discovery rulings and the imposition of $1,345.50 in monetary sanctions and $234.10 in nonparty witness costs is not expressly authorized by statute. "[G]enerally discovery rulings are not directly appealable and are subject to review only after entry of a final judgment." (*Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1060.) An appeal may be taken from an order directing payment of monetary sanctions, but only if the amount exceeds $5,000. (Code Civ. Proc., § 904.1, subd. (a)(12).)

Malinowski nevertheless contends the trial court's order is appealable under the collateral order doctrine because it is a final judgment on collateral matters that finally resolve all issues between her and Dr. Press. We agree in part.

The one-final-judgment rule frowns upon piecemeal appellate adjudication. (*Guntert v. City of Stockton* (1974) 43 Cal.App.3d 203, 208.) However, " '[w]hen a court renders an interlocutory order collateral to the main issue, dispositive of the rights of the parties in relation to the collateral matter, and directing payment of money or performance of an act, direct appeal may be taken. [Citations.] This constitutes a necessary exception to the one final judgment rule. Such a determination is substantially the same as a final judgment in an independent proceeding.' " (*Sanchez v. Westlake Services, LLC* (2022) 73 Cal.App.5th 1100, 1107 (*Sanchez*).) " 'To qualify as appealable under the collateral order doctrine, the interlocutory order must (1) be a final determination (2) of a collateral matter (3) and direct the payment of money or performance of an act.' " (*Id.* at pp. 1107–1108.) A collateral matter is one that is " 'distinct and severable . . . from the general subject of the litigation.' " (*Dr. V. Productions, Inc. v. Rey* (2021) 68 Cal.App.5th 793, 797 (*Dr. V.*).)

Despite the trial court's having issued a single written order, the question of appealability may be directed to each of the court's separate rulings. (See, e.g., *Deck v. Developers Investment Co., Inc.* (2023) 89 Cal.App.5th 808, 829 (*Deck*) [dismissing portion of appeal regarding issue sanctions but considering portion regarding monetary sanctions].) On this score, the court's orders directing Malinowski to pay Dr. Press $1,345.50 in monetary sanctions and $234.10 in reduced copy-service costs meet the elements of the collateral order doctrine. That is, they are final determinations directing the payment of money and are distinct and severable from the general subject of this litigation. (See *Sanchez*, *supra*, 73 Cal.App.5th at pp. 1107–1108.) And though Dr. Press argues that her involvement in this litigation as the court-appointed child custody expert is

7

not yet finished, the court's rulings directing these particular payments are nonetheless final and dispositive of the rights of those involved in the collateral matter. Accordingly, the orders directing Malinowski to pay $1,345.50 in sanctions and $234.10 in nonparty witness costs to Dr. Press are appealable under the collateral order doctrine.

We reach a different conclusion for the trial court's order denying Malinowski's motion to compel. The modern formulation of the collateral order doctrine "makes no mention of an order *denying* the payment of money or *refusing* to require performance of an act." (*Dr. V.*, *supra*, 68 Cal.App.5th at p. 797.) If an interlocutory order is merely " 'prohibitive' in effect (e.g. merely *prevents* the payment of money or performance of an act), the weight of authority holds that it is *not* directly appealable and the right of appeal must await a final judgment." (*Id.* at pp. 797–798.) Here, the trial court merely refused to require Dr. Press's compliance with the deposition subpoena. Accordingly, that portion of the court's order is not directly appealable under the collateral order doctrine, and we will dismiss the portion of Malinowski's appeal challenging it. (See *Deck*, *supra*, 89 Cal.App.5th at p. 829; *Doe*, *supra*, 200 Cal.App.4th at pp. 1432–1433.)[3]

---

[3]     Partial dismissal of the appeal is viable and nonproblematic here because the issues raised in Malinowski's appeal from the monetary sanctions order are not "so interwoven with" or "embraced" in the nonappealable portion as to preclude independent examination. (*Deck*, *supra*, 89 Cal.App.5th at pp. 828–829.)

On May 2, 2023, we denied Malinowski's prior petition for a writ of mandate in connection with the same order challenged here, and we now reject Malinowski's current request to exercise our discretion to treat the appeal as a petition for an extraordinary writ. This case does not present a situation in which "justice cries out for immediate appellate review" due to harm that may be caused by review after a final judgment. (*Art Movers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 651.) We are unpersuaded by Malinowski's claim that she will be denied critical discovery about the child

**B. Monetary Sanctions for Failure to Meet and Confer**

Malinowski contends the trial court erred in imposing monetary sanctions for her failure to meet and confer because Evidence Code section 1563 does not require a party seeking reduction of witness costs to meet and confer with the witness before filing a petition with the court. We reject this claim of error, as the record shows that the trial court awarded monetary sanctions pursuant to Code of Civil Procedure section 2025.480, subdivision (b), not Evidence Code section 1563.

Under Code of Civil Procedure section 2025.480, if a nonparty deponent fails to answer any question or produce any document specified in a deposition subpoena, the subpoenaing party may move for an order compelling that answer or production. (Code Civ. Proc., § 2025.480, subd. (b).) The motion "shall be accompanied by a meet and confer declaration under [Code of Civil Procedure] Section 2016.040" (Code Civ. Proc., § 2025.480, subd. (b)), and a moving party's failure to satisfy this requirement exposes it to monetary sanctions (Code Civ. Proc., § 2023.020).

Under Evidence Code section 1563, subdivision (b), a nonparty deponent may recover "[a]ll reasonable costs incurred" with respect to the production of business records under a deposition subpoena from the subpoenaing party; however, the subpoenaing party may petition the court for an order to show cause reducing all or part of the costs charged. (Evid. Code, § 1563, subd. (b)(4).) Evidence Code section 1563 contains no requirement that the subpoenaing party meet and confer with the witness prior to bringing a petition to reduce costs.

custody evaluation, as the record reflects Dr. Press's agreement to produce responsive documents, as well as a waiver of her claim to fees under Health and Safety Code section 123110, subdivision (j).

Malinowski's claim of error assumes (wrongly) that the trial court awarded monetary sanctions in connection with her petition under Evidence Code section 1563. However, on the record before us, it is reasonably clear the trial court sanctioned Malinowski for failing to meet and confer in connection with her motion under Code of Civil Procedure section 2025.480. In ruling from the bench, the court stated that "[*i*]*n regards to the motion to compel*, that was filed on September 14, 2022," the motion was denied because Malinowski failed to meet and confer in good faith. (Italics added.) Then, in its written order after hearing, the court ordered Malinowski to pay sanctions for her failure to meet and confer in good faith "prior to filing her [request for an order] *compelling* [*Dr. Press's*] *compliance with* [*Malinowski's*] *subpoena*." (Italics added.) No error appears.

In resisting this conclusion, Malinowski relies on the trial court's oral finding of a failure to "meet and confer in good faith *regarding the excessive fee issue*" (italics added), an issue that Malinowski claims was raised only in her petition under Evidence Code section 1563. We disagree that the court's reference to "the excessive fee issue" compels the conclusion that the court acted pursuant to Evidence Code section 1563.

Significantly, Malinowski's motion under Code of Civil Procedure section 2025.480 specifically argued that Dr. Press could not validly charge fees of $400 per hour pursuant to Health and Safety Code section 123110, subdivision (j), because Malinowski and the children were not Dr. Press's "patients" within the meaning of Health and Safety Code section 123105, subdivision (c). As this was a challenge to the legal basis for the $1,200 fee initially quoted by Dr. Press, the court's finding that Malinowski failed to meet and confer "regarding the excessive fee issue" is reasonably construed, along with the court's oral and written remarks, as supporting the imposition

10

of sanctions in connection with the motion under Code of Civil Procedure section 2025.480, subdivision (b).[4]

**C. Evidence Code Section 1563**

Malinowski next contends the trial court's partial reduction of Dr. Press's costs from $367.75 to $234.10 still exceeded the authorized limits of Evidence Code section 1563, because nothing in the statute authorizes compensation for Trinity's $75.00 onsite set-up fee. We are not persuaded.

Under Evidence Code section 1563, subdivision (b)(4), upon the filing of a petition by a subpoenaing party, the trial court shall issue an order to show cause and may hear testimony to determine whether the costs demanded by a nonparty deponent exceed the amount authorized by statute. As used in this provision, the term "reasonable costs" includes, "but is not limited to," the following: $0.10 per page for copies of documents 8½ by 14 inches or less; $0.20 per page for copies of documents from microfilm; actual costs for copies of oversized documents or those requiring special processing; reasonable clerical costs incurred in locating and making the records available "to be billed at the maximum rate of" $24 per hour per person, computed on the basis of $6 per quarter hour or fraction thereof; actual postage charges; and

---

[4] Malinowski makes only conclusory remarks that her counsel adequately met and conferred regarding the excessive fees issue. In the absence of cogent argument, analysis, and supporting citations to the record, we treat the issue as forfeited. (*In re Marriage of Carlisle* (2021) 60 Cal.App.5th 244, 255.) In any event, the record establishes that Malinowski did not attempt to meet and confer on Dr. Press's demand for $1,200 in fees. As recounted above, Olson sent the invoice on September 6, 2022, and attorney Dubcoff offered no response before filing the motion to compel on September 14, 2022.

the actual cost, if any, charged to the witness by a third person for the retrieval and return of records held offsite. (Evid. Code, § 1563, subd. (b)(1).)[5]

"If the court finds the costs were excessive and charged in bad faith by the witness, the court shall . . . excuse the requesting party from any payment of costs charged but not collected, and the court shall also order the witness to pay the requesting party the amount of the reasonable expenses incurred in obtaining the order, including attorney's fees. If the court finds the costs were not excessive, the court shall order the requesting party to pay the witness the amount of the reasonable expenses incurred in defending the petition, including attorney's fees." (Evid. Code, § 1563, subd. (b)(4).)

We review the award of costs for abuse of discretion. (*Finney v. Gomez* (2003) 111 Cal.App.4th 527.)

Admittedly, it is not clear from the record what Trinity's $75.00 onsite set-up fee precisely entailed. However, under well-established rules of appellate procedure, it was Malinowski's burden to affirmatively show error on an adequate record (*In re Marriage of Deal* (2020) 45 Cal.App.5th 613, 622), and she points us to nothing in the record supporting the conclusion that the $75.00 fee was not reasonably incurred by Dr. Press. More importantly, Malinowski's specific contention of legal error—that the $75.00 onsite set-up fee was not expressly permitted by statute—rests on an erroneous presumption that Evidence Code section 1563, subdivision (b), sets forth an exclusive list of allowable costs. She is mistaken, as the statute

---

[5]     In reducing Dr. Press's costs from $367.75 (as invoiced by Trinity) to $234.10—a total reduction of $133.65—it appears the trial court made two adjustments pursuant to Evidence Code section 1563, subdivision (b)(1). First, the court reduced the per page copy rate from $0.25 to $0.10, resulting in an overall reduction of $130.65. Second, the court reduced the hourly labor charge of $25 to the statutorily "maximum rate" of $24 (Evid. Code, § 1563, subd. (b)(1)), resulting in a reduction of $3.

expressly provides that its definition of reasonable costs "includes, but is not limited to," the types of costs and amounts enumerated therein.  (Evid. Code, § 1563, subd. (b)(1).)  As such, the trial court had discretion under Evidence Code section 1563, subdivision (b)(1), to determine whether the $75.00 onsite set-up fee was a reasonable cost incurred by Dr. Press, and Malinowski has failed to provide an adequate record affirmatively showing that the court abused its discretion in this regard.

*In re Marriage of Stephens* (1984) 156 Cal.App.3d 909 does not assist Malinowski.  In *Stephens*, the court held that a $40 charge for a three-page computer printout of an employee's wages and deductions was not allowable under Evidence Code section 1563, subdivision (b)(1), because the computer cost did not expressly fall within any of the categories mentioned therein. (*Id.* at pp. 912–913.)  Critically, however, *Stephens* interpreted a prior version of Evidence Code section 1563 that did not feature the phrase "includes, but is not limited to" in its definition of reasonable costs.  (See *Stephens*, at p. 912 [quoting Evidence Code section 1563, subdivision (b)(1), as follows: " ' "Reasonable costs," as used in this section, shall mean ten cents ($.10) per page for standard reproduction . . . .' "].)  The Legislature subsequently amended the statute in 1986 and 2016 to expressly provide that reasonable costs were not limited to those listed in the statute.  (Stats. 1986, ch. 603, § 8, p. 2077; see Stats. 2016, ch. 85, § 3.)  Because *Stephens*'s holding on this point has been superseded by statutory amendment, the decision provides no support for Malinowski's contention that the $75.00 onsite set-up fee was not allowed under Evidence Code section 1563, subdivision (b)(1).

### D. Alleged Contradictory Orders

Finally, Malinowski contends the trial court issued contradictory orders by denying the motion to compel compliance with the deposition subpoena

while at the same time ordering Malinowski to pay a reduced amount of Dr. Press's copy-service costs to obtain records from her. In Malinowski's words, she "cannot be *not entitled* to the records and yet somehow *be entitled* to the records at the same time." We are again unconvinced.

As set forth above, the trial court denied Malinowski's motion to compel compliance on procedural grounds for her failure to meet and confer. (Code Civ. Proc., § 2025.480, subd. (b).) At the same time, the court granted Malinowski's request to reduce Dr. Press's fees based on the facts presented in the parties' papers—namely, that Dr. Press had agreed to produce documents responsive to the deposition subpoena and had, in fact, incurred costs to do so through e-discovery vendor Trinity. In short, it was not inconsistent for the trial court to, on the one hand, reject Malinowski's motion under Code of Civil Procedure section 2025.480 as procedurally noncompliant, but on the other hand, in light of Dr. Press's agreement to produce records and her actual incurrence of costs to that end, adjust the amount of costs Malinowski would have to pay to conform to Evidence Code section 1563, subdivision (b)(1).

In closing, it is worth emphasizing, notwithstanding Malinowski's unfounded assertions to the contrary, that the trial court's rulings do not have the effect of blocking her from obtaining the business records she seeks or of giving Dr. Press permission to unilaterally withhold records responsive to the deposition subpoena. The court expressly acknowledged in its written order that the $234.10 payment was "for [Dr. Press's] subpoena compliance." Additionally, Dr. Press acknowledges in her appellate briefing that she has agreed to produce responsive documents, and that Malinowski may continue to seek updated records from Dr. Press during the ongoing family court proceedings.

## DISPOSITION

The appeal from the trial court's order denying Malinowski's motion under Code of Civil Procedure section 2025.480 to compel Dr. Press's compliance with the deposition subpoena for production of business records is dismissed.  The court's orders sanctioning Malinowski $1,345.50 for failing to meet and confer and directing Malinowski to pay reduced nonparty witness costs in the amount of $234.10 are affirmed.  Dr. Press is entitled to her costs on appeal.

_____

Fujisaki, Acting P.J.

WE CONCUR:

_____

Petrou, J.

_____

Rodríguez, J.

*Malinowski v. Martin* (A167482)